UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JOBY JOHN,

                Plaintiff,

                                **MEMORANDUM & ORDER**
     - against -                         17-CV-6327 (PKC) (RLM)

ALL STAR LIMOUSINE SERVICE, LTD.,

                Defendant.
----------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

       Defendant All Star Limousine Service, Ltd. moves for summary judgment against Plaintiff Joby John, who worked as a chauffeur for Defendant's car service until July 27, 2017, and who alleges that Defendant failed to pay him for all hours worked, failed to pay him the required rate for overtime work, made improper deductions from his pay, and failed to provide him with required notices. The Court concludes that Plaintiff's Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, claim is barred by the "taxicab exemption," because Plaintiff operated (1) "a chauffeured passenger vehicle;" (2) "available for hire by individual members of the general public;" and (3) had "no fixed schedule, fixed route, or fixed termini." *See Munoz-Gonzalez v. D.L.C. Limousine Serv., Inc.*, 904 F.3d 208, 210 (2d Cir. 2018).[1] Thus, Defendant's motion is granted with respect to Plaintiff's FLSA claim. Plaintiff's state law claims are dismissed without prejudice to refiling in state court.

**BACKGROUND**

**I.    Factual Background**

       Defendant is a transportation service based in Long Island. (Plaintiff's Counter-Statement

---

[1] Unless otherwise noted, all legal citations in this Memorandum and Order omit any internal quotation marks, citations, brackets, and ellipses.

of Material Facts ("Facts"), Dkt. 82, ¶ 1.)[2] It "provides the general public with sedan, limousine[,] and bus transportation services in the New York and tristate area." (*Id.* ¶ 2.) Defendant's "chauffeurs drive paying members of the general public from a pick-up location of the customer's choice to the customer's requested destination of choice." (*Id.* ¶ 5.)

Defendant has a corporate account with a single company, which comprises "less than half of [Defendant's] business." (*Id.* ¶ 82.) "Under that agreement, there are no recurrent rides, fixed routes, fixed termini or fixed schedules." (*Id.* ¶ 83.) Otherwise, Defendant's "[c]ustomers are not required to have a contract or account with [Defendant] or be associated with a business that has a contract or account with [Defendant]." (*Id.* ¶ 79.)[3]

Plaintiff was a "driver/chauffeur" for Defendant from July 2005 until July 2017. (*Id.* ¶ 6.) "Plaintiff would receive notice of available rides from a dispatcher and then drive to the customer's chosen pick-up location from [Defendant's] facilities." (*Id.* ¶ 9.) "The dispatcher [would] receive[] the pick-up and drop-off locations directly from the customer." (*Id.* ¶ 10.) "Plaintiff would then drop the passenger off at their chosen location, which could be anywhere the passenger chose in the tri-state area." (*Id.* ¶ 14.) "Plaintiff was not told to take a fixed or specific route for any particular job." (*Id.* ¶ 15.) "Once a customer was dropped-off, the dispatcher would then give the chauffeur their next job." (*Id.* ¶ 61.)

---

[2] Unless otherwise noted, all facts in this Memorandum and Order are undisputed. The Court cites Plaintiff's Counter-Statement because it reflects Defendant's assertions and states whether Plaintiff disputes those assertions.

[3] Plaintiff contends that "these are far from the only services that Defendant provides, as for the entirety of Plaintiff's employment, 40-43% of Defendant's business was derived from corporate clients and/or recurring contracts." (Facts, Dkt. 83, ¶¶ 2, 5.) As noted below, even if there is a genuine dispute as to this assertion, it is immaterial.

2

II.     **Procedural Background**

On October 31, 2017, Plaintiff sued Defendant, alleging violations of FLSA and the New York Labor Law and its implementing regulations.[4] (*See generally* Complaint, Dkt. 1.) Plaintiff alleges that Defendant failed to pay him for all hours worked, failed to pay him the required rate for overtime work, made improper deductions from his pay, and failed to provide him with required notices. (*See id.* ¶¶ 27–41.) On December 22, 2017, Defendant answered the complaint. (*See* Answer, Dkt. 9.) The parties conducted discovery and settlement negotiations until late 2020, but were unable to settle the case. (*See* Dkt. 64.)

On February 8, 2021, Defendant served Plaintiff with a motion for summary judgment. (*See* Dkt. 72.) The motion was fully briefed by May 21, 2021. (*See* Memorandum in Support of Defendant's Motion for Summary Judgment, Dkt. 80; Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp."), Dkt. 83; Reply in Support of Defendant's Motion for Summary Judgment, Dkt. 88.)

**LEGAL STANDARD**

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (The summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."). "A fact is material if it 'might affect the outcome of the suit under

---

[4] Although the Complaint purportedly is brought by Plaintiff and "all those similarly situated," Plaintiff has not sought class certification. On June 24, 2019, Ahmed Bassiouny, a former chauffeur for Defendant, joined Plaintiff's lawsuit (*see* Dkt. 35), but Bassiouny settled with Defendant in February 2020 and was dismissed from the case (*see* Dkt. 57).

3

the governing law.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (quoting *Anderson*, 477 U.S. at 248). "To present a 'genuine' issue of material fact sufficient to defeat a motion for summary judgment, the record must contain contradictory evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Horror Inc. v. Miller*, 15 F.4th 232, 241 (2d Cir. 2021) (quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the burden to demonstrate the absence of any genuine issues of material fact . . . ." *Smith v. Barnesandnoble.com, LLC*, 839 F.3d 163, 166 (2d Cir. 2016). Once this burden is met, the burden shifts to the nonmoving party to proffer some evidence establishing the existence of a question of fact that must be resolved at trial. *See Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the non-movant." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003). That is, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002).

"[A]t the summary judgment stage, the district court is not permitted to make credibility determinations or weigh the evidence . . . ." *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021). It must "consider the record in the light most favorable to the non-movant" and "resolve all ambiguities and draw all factual inferences in favor of the non-movant 'if there is a "genuine" dispute as to those facts.'" *Loreley*, 13 F.4th at 259 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "[T]he district court may not properly consider the record in piecemeal fashion; rather, it must 'review all of the evidence in the record.'" *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000)).

4

# DISCUSSION

## I. Defendant Is Entitled to Summary Judgment on Plaintiff's FLSA Claim

Plaintiff alleges that Defendant "willfully failed to pay Plaintiff and all those similarly situated, overtime compensation at rates not less than 1.5 times their regular rate of pay for each and all hours worked in excess of forty hours in a work week, in violation of 29 U.S.C. § 207." (Complaint, Dkt. 1, ¶ 53.)

### A. Legal Standard – FLSA

#### 1. FLSA

"Congress enacted the FLSA in 1938." *Munoz-Gonzalez v. D.L.C. Limousine Serv., Inc.*, 904 F.3d 208, 212 (2d Cir. 2018) (citing Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C. § 201, *et seq.*). "Sections 6 and 7 of the FLSA, respectively, require that employers pay covered employees a minimum wage and overtime pay." *Id.* (citing 29 U.S.C. §§ 206, 207). Section 207(a) "requires that employers pay employees one-and-a-half times their regular rate of pay for every hour exceeding forty each workweek." *Id.* at 210 (citing 29 U.S.C. § 207(a)).

#### 2. The Taxicab Exemption

"Section 13(b) of the FLSA exempts certain categories of employees from overtime but not minimum wage." *Id.* at 212. Section 13(b)(17) is "the 'taxicab exemption,' which exempts from the overtime requirement 'any driver employed by an employer engaged in the business of operating taxicabs.'" *Id.* (citing 29 U.S.C. § 213(b)(17)). "Three factors guide [a court's] understanding of what a 'taxicab' is—namely, that it is: (1) a chauffeured passenger vehicle; (2) available for hire by individual members of the general public; (3) that has no fixed schedule, fixed route, or fixed termini." *Id.* at 210.

In *Munoz-Gonzalez*, the Second Circuit held that a limousine service qualified for the taxicab exemption—despite the fact that its "cars [did] not look like taxicabs" and "it advertise[d]

itself as a luxury car company"—because (1) its "fleet consist[ed] of chauffeured passenger vehicles"; (2) its "cars [we]re available for hire by individual members of the general public"; and (3) its "cars [would] take passengers wherever they want to go and d[id] not cover fixed routes or adhere to fixed schedules or fixed termini." *Id.* at 216, 218.  The court found no genuine dispute of material fact as to the second element, even though the defendant had recurrent transportation contracts with a company and a local hotel. *Id.* at 217.  The court explained that "[w]hat matter[ed] [was] that [the defendant's] cars were available for hire by individual members of the general public." *Id.*  While recognizing that "a company that received virtually all its business from recurrent contracts and corporate clients might not be available for hire by individual members of the general public," the *Munoz-Gonzalez* court noted that the plaintiff's recurrent contracts accounted for less than five percent of its business, so its services were still available to individual members of the public. *Id.*

### B.      The Taxicab Exemption Applies to Plaintiff's FLSA Claim

Defendant argues that the taxicab exemption bars Plaintiff's FLSA claim.[5]  Plaintiff does not make any argument as to the first and third factors the court considered in *Munoz-Gonzalez*—namely, whether Defendant operated "chauffeured passenger vehicle[s]" with "no fixed schedule,

---

[5] On September 27, 2019, Plaintiff's counsel moved to withdraw on the ground that "Plaintiffs and Plaintiffs' counsel ha[d] wildly divergent views on the applicable law and on how to proceed" (Dkt. 37-1 ¶¶ 9, 11, 15), in light of *Munoz-Gonzalez* and a subsequent case, *Jihui Zhang v. XYZ Limousine, Inc.*, No. 15-CV-7440 (JS) (AKT), 2019 WL 1220310, at *7 (E.D.N.Y. Mar. 15, 2019), *report and recommendation adopted*, 04/09/2019 Docket Order.  Magistrate Judge Roanne L. Mann denied the motion to withdraw, reasoning that the cited cases did "not foreclose [Plaintiff] from advocating a different view of the 'taxicab exemption.'"  (Dkt. 46, at ECF 3 (citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination).)  Judge Mann explained that "[a]n attorney may not withdraw simply because he later comes to believe that his client's case is weaker than his evaluation when he first took the case." (*Id.* (quoting *Welch v. Niagara Falls Gazette*, No. 98-CV-685E(M), 2000 WL 1737947, at *2 (W.D.N.Y. Nov. 17, 2000)).)

6

fixed route, or fixed termini," *see id.* at 210. (*See* Pl. Opp., Dkt. 83, at 8 (arguing that "[k]ey here is . . . the second prong," and making no argument as to the first or third). As Plaintiff admits, "[Defendant's] chauffeurs drive paying members of the general public from a pick-up location of the customer's choice to the customer's requested destination of choice." (Facts, Dkt. 82, ¶ 5.) "Plaintiff was not told to take a fixed or specific route for any particular job." (*Id.* ¶ 15.) Rather, Defendant's customers provided pick-up and drop-off locations to a dispatcher, and "Plaintiff would receive notice of available rides from [the] dispatcher and then drive to the customer's chosen pick-up location from [Defendant's] facilities." (*Id.* ¶¶ 9–10.) Thus, as in *Munoz-Gonzalez*, Defendant operates "chauffeured passenger vehicles" that "take passengers wherever they want to go." 904 F.3d at 216.

Plaintiff nevertheless argues that the taxicab exemption does not apply. He points to the second factor the court considered in *Munoz-Gonzalez*—namely, whether Defendant's cars are "available for hire by individual members of the general public." *See id.* at 210. Plaintiff argues that a genuine dispute of material fact remains under this factor because, "during [his] employment, between forty to forty-three percent of [Defendant's] services were dedicated to servicing its recurrent/corporate contract." (Pl. Opp., Dkt. 83, at 8.) Plaintiff contends that, in this respect, this case differs from *Munoz-Gonzalez*, where less than five percent of the defendant's business involved recurring or corporate contracts, and where the court opined that the taxicab exemption might not apply when "virtually all" of a company's business stems from such contracts.[6] Plaintiff

---

[6] *Munoz-Gonzalez* declined to defer to the Department of Labor's Field Operations Handbook (2016 ed.) ("Handbook"), which provides that "[t]he taxicab business . . . operates *without* fixed routes or contracts for recurrent transportation." 904 F.3d at 216–17 (emphasis added) (quoting Handbook § 24h01).

7

argues that "[t]he facts here fall split in the middle between the guideposts" of five percent and "virtually all." (*Id.* at 10.)

Plaintiff mischaracterizes *Munoz-Gonzalez*. The court there did not set "guideposts" at five percent and "virtually all," nor, as Plaintiff suggests, reserve cases in between for the factfinder. It merely explained that *when* "virtually all" of a company's business involves recurring contracts, it "might not be available for hire by individual members of the general public" under the second factor. 904 F.3d at 217. Here, Plaintiff does not go so far as to argue that the alleged "forty-three percent" of Defendant's business that involves recurring contracts is "virtually all." Although a close case might arise concerning the meaning of "virtually all," this is not that case.[7]

In any event, "[w]hat matters is that [the company's] cars [a]re available for hire by individual members of the general public," regardless of whether the company also has recurring contracts. *Id.* "Therefore, so long as a ground transportation company is available for hire by the general public, contracts for recurrent transportation do not render the taxicab exemption inapplicable." *Jihui Zhang v. XYZ Limousine, Inc.*, No. 15-CV-7440 (JS) (AKT), 2019 WL 1220310, at *7 (E.D.N.Y. Mar. 15, 2019), *report and recommendation adopted*, 04/09/2019 Docket Order. Here, there is no dispute that more than half of Defendant's business stems from serving the general public. As discussed, Plaintiff admits that "[Defendant's] chauffeurs drive paying members *of the general public* from a pick-up location of the customer's choice to the

---

[7] Plaintiff also cites *McKinney v. Med Grp. Transp. LLC*, 988 F. Supp. 2d 993, 1002 (E.D. Wis. 2013), where "[t]he vast majority of [the defendant's] business, between ninety-five and ninety-eight percent, [came] from contracts with third parties," and *Alabsi v. Savoya, LLC*, No. 18-CV-6510 (KAW), 2019 WL 1332191, at *1 (N.D. Cal. Mar. 25, 2019), where, similarly, "[t]he vast majority of [the] [d]efendant's business [came] from corporate clients and recurrent contracts." But just as "forty-three percent" is not "virtually all" of Defendant's business, it is not the "vast majority."

8

customer's requested destination of choice." (Facts, Dkt. 82, ¶ 5 (emphasis added).) In fact, Plaintiff concedes in his summary judgment briefing that "fifty-seven to sixty percent of [Defendant's] business [is devoted] to the general public, meaning those who are not required to have a contract or account with the company to use its services." (Pl. Opp., Dkt. 83, at 4.) Because Defendant's cars are "available for hire by the general public," its "contracts for recurrent transportation do not render the taxicab exemption inapplicable." *See Zhang*, 2019 WL 1220310, at *7.

As in *Munoz-Gonzalez*, Defendant operates a business "consist[ing] of chauffeured passenger vehicles"; its "cars are available for hire by individual members of the general public"; and its "cars take passengers wherever they want to go and do not cover fixed routes or adhere to fixed schedules or fixed termini." 904 F.3d at 216. Thus, the taxicab exemption applies, and Defendant is entitled to summary judgment on Plaintiff's FLSA claim, which must be dismissed.

## II. State Law Claims

"[A] federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. §§ 1367(a), (c)). "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Id.* (citing 28 U.S.C. § 1367(c)). Still, "if a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well." *Oneida Indian Nation of N.Y. v. Madison County*, 665 F.3d 408, 437 (2d Cir. 2011).

The FLSA claim is the only federal cause of action in this case. Because the Court grants summary judgment as to that claim, it declines to exercise supplemental jurisdiction over Plaintiff's state law claims. The state law claims therefore are dismissed without prejudice to refiling in state court.

9

## CONCLUSION

Defendant's motion for summary judgment is granted with respect to Plaintiff's Fair Labor Standards Act claim, which is barred by the "taxicab exemption" and therefore dismissed. Plaintiff's state law claims are dismissed without prejudice to refiling in state court. The Clerk of Court is respectfully directed to enter judgment and close this case.[8]

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: January 4, 2022
      Brooklyn, New York

---

[8] Defendant's request for a hearing on its motion for summary judgment (Dkt. 87) is denied as unnecessary.